IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 07-cv-00137-ZLW-BNB

EDWARD ALLEN, a/k/a EDWARD CLUTTS,

Plaintiff,

v.

FRED FIGUERA,
CORRECTIONS CORPORATION OF AMERICA,
DAVID NELLIS, and
LT. WILLIAMS,

Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

This matter arises on **Defendants Figueroa, Nellis, Williams and Corrections Corporation of America's Motion for Summary Judgment with Authorities** [Doc. #252, filed 12/01/2008] (the "Motion"). I respectfully RECOMMEND that the Motion be GRANTED.

### I. STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). Nevertheless, I cannot act as advocate for a *pro se* litigant, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion and that party must be afforded the benefit of all reasonable inferences to be drawn from the evidence. Adickes v. S. H. Kress & Co., 398 U.S.

144, 157 (1970). Rule 56(c), Fed.R.Civ.P., provides that summary judgment should be rendered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, discovery and disclosure materials on file, and any affidavits, the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 447 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 979 (10th Cir. 2002). The party opposing the motion is then required to go beyond the pleadings and designate evidence of specific facts showing that there is a genuine issue for trial. Celotex, 447 U.S. at 324. Only admissible evidence may be considered when ruling on a motion for summary judgment. World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir. 1985).

## II.  UNDISPUTED MATERIAL FACTS

1. The plaintiff is incarcerated by the Colorado Department of Corrections ("DOC"). *Complaint*, p. 4. He was confined at the North Fork Correctional Facility at all times relevant to the allegations of the Complaint. Id. at p. 3. The North Fork Correctional Facility is located in

Oklahoma. Id. at p. 2, ¶ 1. The plaintiff was transferred to the North Fork Correctional Facility on December 14, 2006. *Motion*, Ex. A-1, 17:3-10.

2. Defendant Corrections Corporation of America is responsible for the operation of the North Fork Correctional Facility. *Complaint*, p. 3. At all times pertinent to the allegations of the Complaint, defendant Figueroa[1] was the Warden of the North Fork Correctional Facility, and defendants Nellis and Williams were correctional officers at the facility. Id. at pp. 2-3; *Motion*, Ex. A-2, ¶ 1; Ex. A-3, ¶ 1; Ex. A-4, ¶ 1.[2]

3. The plaintiff spoke with Warden Figueroa on December 31, 2006, and expressed his concern that his wife's ex-husband, Mr. Casalos, was currently housed at the North Fork Correctional Facility and that he believed the DOC, as a retaliatory action, had transferred both the plaintiff and Mr. Casalos to the North Fork Correctional Facility so they would " duke it out or stab each other or whatever violence can occur." *Motion*, Ex. A-1, 70:17-71:21; Ex. A-3, ¶ 2.

4. The plaintiff had never met Mr. Casalos. Id. at Ex. A-1, 118:8-12. He believed that Mr. Casalos intended to harm him because, according to his wife, Mr. Casalos was a jealous and violent person who dominates everyone around him. Id. at 118:13-22; Ex. A-3, ¶ 3.[3]

5. After advising Warden Figueroa of his concerns regarding Mr. Casalos, Figueroa expressed an understanding of the situation and advised the plaintiff that he would move him

---

[1]The defendants assert, and the plaintiff does not dispute, that the correct spelling of this defendant's last name is Figueroa, not Figuera.

[2]Exhibits A-2 and A-3 are the unsigned affidavits of defendants Williams and Figueroa. Identical signed affidavits were submitted as separate documents after the Motion was filed [Docs. #253 and #258]. As a matter of convenience, I cite to the exhibits attached to the Motion.

[3]The defendants assert that the plaintiff saw Mr. Casalos several times but did not have any interactions or altercations with him. *Motion*, p. 10, ¶ 52. However, the cited evidence does not support this statement.

3

immediately. Id. at Ex. A-1, 71:20-25; 73:20-22. He also advised the plaintiff that the DOC did not have a protective custody policy and that he was obligated to follow DOC policy and procedure concerning Colorado inmates. Id. at Ex. A-1, 73:4-16; Ex. A-3, ¶ 4.

6. The plaintiff was moved to segregation after speaking with Figueroa. Id. at Ex. A-1, 74:10-12. The plaintiff felt that Figueroa moved him to segregation in an effort to keep him safe. Id. at 73:23-74:12.

7. After he was moved to segregation, the plaintiff did not have any further conversations with Figueroa about his safety or protective custody. Id. at Ex. A-1, 74:13-18 and Ex. A-3, ¶ 5.

8. Warden Figueroa was not aware of any safety issues that would require the plaintiff to be provided a single cell. Id. at Ex. A-3, ¶ 6. Warden Figueroa is not involved in cell assignments for inmates in segregation or the general population. Id. at Ex. A-3, ¶ 7. He does not have personal knowledge of the staffing decisions made during the time the plaintiff was in segregation. Id. The plaintiff admits that he does not know whether Warden Figueroa had personal knowledge of the bunking decisions made by the officers in segregation. Id. at Ex. A-1, 80:11-22.

9. On January 5, 2007, inmate Blair was placed with the plaintiff in his cell in segregation. Id. at 19:25-20:3. When Blair received his property on that date, the prison official also handed him his pencils and pens. Id. at 30:3-18.

10. According to the plaintiff, Mr. Blair told him that on January 5, 2007, Officer Nellis told Blair that the plaintiff was a "PC sex offender," id. at 19:2-6; 24:7-23, and on January 8, 2007, Blair told the plaintiff that he felt he was being "set up for a hate crime" by being placed in

the same cell as the plaintiff. Id. at 17:21-25; 19:2-24. It is a hate crime for an inmate to attack a sex offender. Id. at 19:10-11.

11. The plaintiff was not present when Officer Nellis allegedly told Blair that the plaintiff was a sex offender; the plaintiff is not aware of anybody else who overheard the conversation between Nellis and Blair; and the plaintiff never asked Nellis about the conversation. Id. at 24:24-25:14.

12. Officer Nellis did not tell Blair or any other inmate that the plaintiff was a protective custody sex offender. Id. at Ex. A-4, ¶ 4. Officer Nellis did not know the plaintiff's criminal history or custody status while he was incarcerated at the North Fork Correctional Facility. Id. at ¶ 3.

13. Blair never attempted to harm the plaintiff during the time they were incarcerated together. Id. at Ex. A-1, 31:12-15. The plaintiff never asked anyone to remove Blair from his cell because he did not believe Blair intended to harm him. Id. at 31:17-32:4.

14. On January 12, 2007, when being returned to his cell, the plaintiff was told by a prison official that Blair was refusing to allow the plaintiff back into the cell. Id. at 54:1-25; 57:1-58:13. Upon hearing this information, the plaintiff suffered from an anxiety attack brought on by the feeling that he would be put into a cell with somebody worse than Blair. Id. at 54:13-18. The attack consisted of chest pains and a feeling of "overall uneasiness." Id. at 57:12-15. The plaintiff was taken to the medical department, where he was examined by a nurse. Id. at 57:19-22. The nurse took the plaintiff's blood pressure and told him if it happened again, he should put his head between his knees and breath deeply. Id. at 57:15-18. The plaintiff was not provided medication for the anxiety attack. Id. at 93:10-12.

15. When the plaintiff was returning from the medical department, defendant Williams advised him that he would be put into a cell with a different inmate. Williams said he had discussed the plaintiff's situation with the inmate, and the inmate did not have any problems if the plaintiff moved in with him over the weekend. Id. at 58:6- 59:9. The plaintiff took this to mean that Williams advised the inmate that the plaintiff was in segregation on protective custody. Id. at 59:10-24.

16. Williams did not tell the inmate that the plaintiff was a protective custody offender because he did not know the plaintiff was a protective custody offender. Id. at Ex. A-2, ¶ 3. Williams was never advised of the reason for the plaintiff's new cell assignment, id. at ¶ 2, and he was not aware of any safety issues in placing the plaintiff in the new cell. Id. at ¶ 4.

17. The plaintiff was escorted to his new cell with inmate Elkins-El. Id. at Ex. A-1 60:17-19. The plaintiff was placed in the cell with Elkins-El on the evening of January 12, 2007, shortly before shift change. The plaintiff did not have any further conversations with Williams about being placed in the cell with Elkins-El. Id. at 65:20-25.

18. After placing the plaintiff in the cell with Elkins-El, Williams left work for the evening. Id. at Ex. A-2, ¶ 5. He was not aware of any problem between the plaintiff and Elkins-El until he was served with the plaintiff's Complaint in this action. Id.

19. After being placed in the cell with Elkins-El, the plaintiff advised Elkins-El that he had a problem with his previous cell mate because the guard told him the plaintiff was a protective custody inmate. Id. at Ex. A-1, 62:8-14. Elkins-El yelled, cussed, and kicked and banged on the door after learning that the plaintiff was in protective custody. The plaintiff "saw

him with pens in his hands like he was going to use them for stabbing weapons." This lasted all night. Id. at 64:23-65:4.

20. The plaintiff contacted a prison official on the evening of January 12, 2007, and requested removal from the cell. He was moved to a cell by himself approximately 24 hours after being placed in the cell with Elkins-El. Id. at 65:5-17.

21. The plaintiff states that he stayed up for 24 hours to keep from being injured by Elkins-El. Id. at 66:14-67:4. Elkins-El did not hit or stab the plaintiff. Id. at 55:21-67:4. The plaintiff had a second anxiety attack during the time he was housed with Elkins-El. Id. at 91:16-20. He did not receive medical attention for the second attack. Id. at 91:21-24.

22. The plaintiff states that he would not have had any concerns if he had been placed in segregation in a cell by himself. Id. at 119:21-24.

23. On January 31, 2007, at the direction of former defendant Jordan, the plaintiff was moved from Unit C in segregation to Unit D in the general population. Id. at 74:19-21; 75:10-15. The plaintiff opted to move to Unit D because he was facing placement with another cell mate. Id. at 75:24-76:13. The plaintiff "figured they were going to put [him] in another cell with somebody probably crazier than Mr. Blair . . . or Mr. Elkins-El. Id. at 76:1-4.

24. The plaintiff did not talk to Warden Figueroa about the move to Unit D, and he does not know whether Warden Figueroa was aware of the fact that he was being moved to Unit D. Id. at 76:14-25.

The plaintiff filed his Amended Complaint (the "Complaint") on May 10, 2007 [Doc. #15]. The Complaint asserts seven claims; each claim is brought against a separate defendant. Claims One, Three, and Four have been dismissed [Doc. #234].

7

Claim Two alleges that defendant Figueroa violated the plaintiff's Eighth Amendment rights because he "is responsible for overseeing staff members and inmates as well as overall operations at North Fork Correctional Facility and had personal knowledge of plaintiff[4] concerns." *Complaint*, p. 5.[5]

Claim Five alleges that Corrections Corporation of America violated the plaintiff's Eighth Amendment rights because it approved the DOC's policies regarding protective custody and double bunking in the segregation unit, and it "empowers its employees to inforce plolicys." Id. at p. 3.

Claim Six is asserted against defendant Nellis for violation of the plaintiff's Eighth Amendment rights. Claim Six alleges that Nellis "aproche cell 20 in segratantion wile plaintiff was in the out of cell shower, and told the plaintiff cell mate that his cell mate was a protetive coustody sex ofender, and then gave him pences and pens when the plaintiff was only allowed a sucrity pen. Id.

Claim Seven alleges that defendant Williams violated the plaintiff's Eighth Amendment rights when he locked the plaintiff in a cell with a known gang member and forced him to stay there despite the gang member's "postering and yelling and banging on the door." Id.

The plaintiff seeks injunctive relief, declaratory relief, compensatory damages, and punitive damages.   Id. at p. 9.

### III. ANALYSIS

---

[4]I have quoted the plaintiff's filings as written, without correction or acknowledgment of error.

[5]The Complaint is not consecutively paginated. Therefore, I have cited to the page numbers as assigned by the court's docketing system.

### 1. The Plaintiff's Objections to the Defendant's Motion

The plaintiff objects to the defendants' Motion as "untimely and prejudical." *The Plaintiff Objects to Defendants Figurea, Nellis Willams and Corrections Corporation of America's Motion for Summery Judgment with Athoritys* [Doc. #268] (the "Response"), p. 1.

The plaintiff claims that the Motion is untimely and prejudicial because he has filed a motion to suppress his deposition [Doc. #227];[6] the court has not ruled on the admissibility of the deposition; and the defendants have not submitted the deposition to him for his inspection and approval. Id.

The defendants' Motion was filed on December 1, 2008--the deadline for filing dispositive motions. Thus, the defendants' Motion is not untimely.

Moreover, the plaintiff has not shown that he suffered any prejudice because the defendants filed their Motion for Summary Judgment while his motion to suppress the deposition was pending. He does not argue that he is unable to respond to the Motion;[7] he has not sought an extension of time to respond to the defendant's Motion; and he does not challenge the substance of his deposition.

As to the plaintiff's complaint that the defendants did not provide him an opportunity to "inspect" and "approve" his deposition, the Federal Rule of Civil Procedure state:

---

[6]On October 22, 2008, the plaintiff filed a motion requesting that the court strike his deposition, taken by the defendants on October 15, 2008, because the Court Reporter was not authorized to administer an oath in the State of Colorado. By separate order, I have denied the motion because the plaintiff did not timely object to the Court Reporter's qualifications as required by Rule 32(d)(2), Fed. R. Civ. P.

[7]Indeed, his response to the Motion is included in his objections to the Motion. *Response*, pp. 2-5.

> On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which: (A) to review the transcript or recording; and (B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

Fed.R.Civ.P. 30(e)(1).

The plaintiff does not argue or demonstrate that he made a request to review the transcript prior to completion of his deposition.[8] His objections to the Motion are denied insofar as they are based on matters related to his deposition.

The plaintiff also objects to the Motion because his motion to amend the Complaint [Doc. #233] is pending. The filing of this motion does not render the defendant's Motion untimely or prejudicial. The plaintiff's current motion is his third attempt to amend the Complaint. See Docs. #105 and #134. I recommended denial of both of his previous motions because they suffered multiple deficiencies [Docs. #112 and #219], and the district judge adopted my recommendations [Doc. #234]. I have separately recommended denial of the plaintiff's third motion to amend because it suffers some of the same deficiencies and because it is untimely. The plaintiff's objections to the Motion are denied insofar as they are based on his motion to amend the Complaint.

Finally, the plaintiff objects to the Motion because the affidavits contained in defendant's Exhibits A-2 and A-3 are not signed. The Motion was submitted with two unsigned affidavits.

---

[8]The defendants submitted two exhibits demonstrating that they sent the plaintiff a copy of his deposition, amendment sheets, and a signature page with a request to complete and return the materials, and that the plaintiff refused the materials. *Defendants Figueroa, Nellis, Williams and Corrections Corporation of America's Reply in Support of Motion for Summary Judgment with Authorities* [Doc. #279] (the "Reply"), Exs. A-6 and A-7. Because there is no affidavit authenticating or explaining the exhibits, I decline to consider them.

The signed affidavits were subsequently filed with the Court [Docs. #253 and #258]. Although I disapprove of the defendants' failure to seek leave of court to accept the untimely filing of the signed affidavits, I decline to strike the Motion on this basis. The plaintiff does not argue or demonstrate that he suffered any prejudice because of the delay in submitting the affidavits. Accordingly, the plaintiff's objections to the Motion are overruled.

### B.  Failure to Demonstrate a Cognizable Constitutional Claim

This action is brought under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

The defendants assert that the plaintiff has failed to state a cognizable claim under the Eighth Amendment. I agree.

The Eighth Amendment places a burden on prison officials to "take reasonable measures to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526-27 (1984). A prison official violates the Eighth Amendment if he is deliberately indifferent to the need to protect an inmate from a substantial risk of serious harm from other inmates. Farmer v. Brennan, 511 U.S. 825, 834 (1994). A prisoner asserting a claim for failure to protect must establish that the deprivation alleged is sufficiently serious and that the defendant acted with deliberate indifference. Id.

### 1. Substantial Risk of Serious Harm

Although an inmate "does not have to await the consummation of threatened injury to obtain preventive relief," a plaintiff "must furnish more than a conclusory claim of being afraid." Riddle v. Mondragon, 83 F.3d 1197, 1205 (10th Cir. 1996). To satisfy the first prong of the Farmer test, "[a] prisoner must demonstrate that the deprivation was sufficiently serious and that a prison official's act or omission resulted in the denial of the minimal civilized measure of life's necessities." Grimsley v. MacKay, 93 F.3d 676, 681 (10th Cir. 1996). "This is an objective standard. Such conditions have been found to exist where prison officials disregard repeated warnings of danger to a particular prisoner and continually refuse to make the situation safer, for example by . . . separating the prisoner from other inmates who previously have attacked him on multiple occasions." Id.

Here, the plaintiff's claims arise from his incarceration at the same facility as his wife's ex-husband and his placement in the same cells as Messrs. Blair and Elkins-El. The plaintiff's only evidence regarding his wife's ex-husband is his wife's characterization of him as a jealous and violent person. There is no evidence that the ex-husband actually threatened the plaintiff or that he even knew the plaintiff.

Nor is there any evidence that the plaintiff's placement in a cell with Mr. Blair posed a substantial risk of serious harm to the plaintiff. The plaintiff claims that the defendants "tryed to get Mr Blair to harm the plaintiff." *Response*, p. 4, ¶ 9. However, the plaintiff bases this claim on inadmissible hearsay. The only competent evidence before me shows that defendant Nellis did not tell Blair or any other inmate that the plaintiff was a protective custody sex offender.[9]

---

[9] I note that the plaintiff has submitted an exhibit entitled "Statement by Jerry Blair 132644 Colorado." *Plaintiff's Responce to Defence Reply in Support of Summary Judgement* [Doc. #284]. The statement is not sworn. Moreover, it addresses the actions of an unidentified

Indeed, Officer Nellis did not know the plaintiff's criminal history or custody status while he was incarcerated at the North Fork Correctional Facility. Moreover, Blair never attempted to harm the plaintiff during the time they were incarcerated together, and the plaintiff never asked anyone to remove Blair from his cell because he did not believe Blair intended to harm him.

As to the alleged threat posed by Mr. Elkins-El, defendant Williams did not tell Elkins-El that the plaintiff was a protective custody offender because he did not know the plaintiff was a protective custody offender. To the contrary, the <u>plaintiff</u> provided the information that agitated Elkins-El. Williams was never advised of the reason for the plaintiff's new cell assignment, and he was not aware of any safety issues in placing the plaintiff in the new cell. Moreover, the plaintiff was moved to a cell by himself approximately 24 hours after complaining of being placed in the cell with Elkins-El.

The plaintiff has not provided any competent evidence to create a material fact dispute regarding whether he was incarcerated under conditions that posed a substantial risk of serious harm.

### 2. Deliberate Indifference

In addition, the plaintiff has failed to create a material fact dispute regarding whether any of the defendants were deliberately indifferent to his safety. Deliberate indifference means that the official "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, 511 U.S. at 837.

### a. Defendant Figueroa

---

prison guard. It does not implicate any of the defendants.

Claim Two alleges that defendant Figueroa violated the plaintiff's Eighth Amendment rights because he "is responsible for overseeing staff members and inmates as well as overall operations at North Fork Correctional Facility and had personal knowledge of plaintiff concerns." *Complaint*, p. 5. The defendants assert that defendant Figueroa cannot be held liable because he did not personally participate in any of the alleged constitutional violations. *Motion*, pp. 14-16.

An individual cannot be held liable in a section 1983 action unless he caused or participated in an alleged constitutional violation. McKee v. Heggy, 703 F.2d 479, 483 (10th Cir. 1983). Respondeat superior is not within the purview of section 1983 liability. Id. In order for a supervisor to be liable under section 1983, there must exist a causal connection or an affirmative link "between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." Butler v. City of Norman, 992 F.2d 1053, 1055 (10thCir. 1993); see also Rizzo v. Goode, 423 U.S. 362, 371 (1976). Without a showing of direct responsibility for the alleged violations, liability will not be imposed on a supervisory official. Id.

The plaintiff admits that his claim against Warden Figueroa is based on the fact that Figueroa delegated authority to Nellis and Williams. *Motion*, Ex. A-1, p. 119:1-24. Moreover, the record establishes that Figueroa did not have direct involvement with any alleged constitutional violations. Figueroa was not involved in cell assignments for inmates in segregation or the general population, and he did not have personal knowledge of the staffing decisions made during the time the plaintiff was in segregation. Indeed, the plaintiff admits that

he does not know whether Warden Figueroa had personal knowledge of the bunking decisions made by the officers in segregation.

### b.  Defendant Corrections Corporation of America

Claim Five alleges that Corrections Corporation of America violated the plaintiff's Eighth Amendment rights because it approved the Colorado Department of Corrections' policies regarding protective custody and double bunking in the segregation unit, and it "empowers its employees to inforce plolicys." *Complaint*, p. 3.

An entity sued under section 1983 is subject to liability only when its official policies or customs are responsible for deprivation of rights protected by the Constitution.  Monell v. New York City Department of Social Services, 436 U.S. 658, 694 (1978).[10]  The plaintiff has not demonstrated any deprivation of his constitutional rights resulting from policies regarding protective custody and double bunking in the segregation unit.

### c.  Defendant Nellis

Claim Six alleges that Nellis "aproche cell 20 in segratantion wile plaintiff was in the out of cell shower, and told the plaintiff cell mate that his cell mate was a protetive coustody sex ofender, and then gave him pences and pens when the plaintiff was only allowed a sucrity pen." *Complaint*, p. 3.

However, the evidence establishes that Officer Nellis did not know the plaintiff's criminal history or custody status while he was incarcerated at the North Fork Correctional

---

[10]The circuit court has extended Monell to private entities acting under color of state law. Dubbs v. head Start, Inc., 336 F.3d 1194, 1216 (10th Cir. 2003).

Facility and that he did not tell Blair or any other inmate that the plaintiff was a protective custody sex offender.

### d. Defendant Williams

Claim Seven alleges that defendant Williams locked the plaintiff in a cell with a known gang member and forced him to stay there despite the gang member's "postering and yelling and banging on the door." *Complaint*, p. 3.

The record demonstrates that Williams was never advised of the reason for the plaintiff's new cell assignment; Williams did not tell Elkins-El that the plaintiff was a protective custody offender because he did not know the plaintiff was a protective custody offender; Williams was not aware of any safety issues in placing the plaintiff in the new cell; Williams left work for the evening after placing the plaintiff in the cell with Elkins-El; and Williams was not aware of any problem between the plaintiff and Elkins-El until he was served with the plaintiff's Complaint in this action.

The plaintiff has not provided any competent evidence to create a material fact dispute regarding whether the defendants were deliberately indifferent to his safety.

## IV. CONCLUSION

Because the plaintiff has not set forth any evidence to show that he suffered a sufficiently serious deprivation or that the defendants acted with the requisite deliberate indifference, I respectfully RECOMMEND that Defendants Figueroa, Nellis, Williams, and Corrections Corporation of America's Motion for Summary Judgment with Authorities be GRANTED and

that summary judgment enter in favor of the defendants on all of the plaintiff's claims against them.[11]

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed.R.Civ.P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated July 8, 2009.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge

---

[11] Because I recommend summary judgment on this basis, I do not address the defendants' remaining arguments.